### EVENING POST PUB. CO. v. VOIGHT.

(Circuit Court of Appeals, Second Circuit. March 3, 1896.)

1. EVIDENCE—EXPLAINING IRRELEVANT FACTS.

    When irrelevant evidence, of a character likely to be injurious to the plaintiff's case, has been elicited by the defendant on cross-examination of the plaintiff, it is not error to permit the plaintiff afterwards to introduce evidence, otherwise irrelevant, for the purpose of explaining the facts.

2. SAME—CORRESPONDENCE.

    In an action against the proprietor of a newspaper for libel, the defendant pleaded in mitigation of damages that it had sent to the plaintiff a letter, set out in full in its answer, offering plaintiff an opportunity to publish a statement in regard to the libel, and upon the trial such letter was introduced in evidence. The plaintiff was then permitted to put in evidence two letters from his attorney to the defendant, to which defendant's letter was a reply, for the purpose of showing that defendant's offer was not made voluntarily, but under threat of suit, and was not an offer of full reparation. *Held* no error, though the letters contained statements of facts of which they were not competent evidence, no objection having been made on this ground.

In Error to the Circuit Court of the United States for the Southern District of New York.

James C. Carter (Lawrence Godkin, on the brief), for plaintiff in error.

Eugene Frayer, for defendant in error.

Before PECKHAM, Circuit Justice, and WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff entered upon the verdict of a jury. The assignments of error impugn the rulings of the trial judge in admitting evidence, and some of the instructions to the jury given and refused.

The action was for a libel published by the defendant in the Evening Post newspaper, which, in substance, stated that the plaintiff was formerly the agent at Chicago of the American Casualty Insurance & Security Company, and was dismissed after the company had obtained a judgment against him for $6,396 for premiums collected and unaccounted for; that, according to information obtained from the president of the company, the plaintiff had no claim of any kind upon the premiums; and that there was a long trial in Chicago, in which his accounts were thoroughly examined; and that the company could have prosecuted him for theft, if it had chosen to do so.

By its answer the defendant averred that the judgment was obtained and the plaintiff dismissed by another insurance company, the American Steam-Boiler Insurance Company; that it was for premiums which he had not accounted for; that he had no claim of any kind upon the premiums, and, if he had any, he should have stated so upon the trial; and that such company could have prosecuted him for theft, if it had chosen to do so.

The answer also set up the same facts by way of mitigation of damages, together with the averments that the defendant had at all times been ready and offered to publish any proper statement from the plaintiff upon the subject of the charges; that it had sent to plaintiff a certain letter, set forth in full, containing an offer to that effect; and that the offers were made and the letter was sent in good faith, for the purpose of enabling plaintiff publicly and conspicuously to clear himself of the charges which had been made against him.

There was no evidence whatever upon the trial that the plaintiff had failed to account to any company of which he had been an agent for any sums collected by him, or that a judgment upon such a claim had ever been rendered against him, or that there had ever been any trial, or that any company had ever asserted that he had been dishonest, or that there was any ground for a criminal prosecution of him, or that he had been dismissed because of any of these things.

The proof was that for 11 years prior to August, 1890, plaintiff was a member of the firm of Thatcher & Voight, of Chicago, who were the agents there of the American Steam-Boiler Insurance Company; that, by the course of business between the firm and the company, the agents charged themselves with the premiums upon all policies of the company issued by them, as they were written, whether they had received them or not, and transmitted daily reports to the company, together with monthly statements of account; that at stated times they remitted for all premiums collected, less their commissions; that frequently there was a large balance standing on the books of the company against the firm, sometimes as high as $13,000; that no premiums were ever received by the firm which were not acknowledged to the company and accounted for; that in the summer of 1890 the plaintiff retired from the firm of Thatcher & Voight; that at that time there was a balance upon the books of the company against the firm of $5,983; that the firm claimed, and had for some time, that there were equitable offsets to this account; that various efforts were made by both Thatcher and Voight to induce the company to allow the offsets, but the company refused to acknowledge the justice of the claim; that more than a year after the dissolution of the firm the company commenced a suit against them in New York City to recover the balance; and that no defense was interposed, and in December, 1891, a judgment by default was entered against them. There was ample proof of all these facts, by evidence which was competent, was not objected to, and was uncontroverted.

Several of the assignments of error are founded on the admission of evidence introduced in behalf of the plaintiff for the purpose of showing the true character of the demand on which the judgment against him was recovered, and that it did not involve any imputation of his honesty. If it should be conceded that some of this evidence was inadmissible, its reception was harmless, because all the facts relating to this issue were fully established by competent evidence, and none of them were practically disputed by the defendant. If it had appeared by the judgment record that the recovery against the plaintiff had proceeded upon averments of his dishonest conduct, it would nevertheless have been competent for him to disprove the truth of such averments. The judgment would not have been conclusive of his guilt, or of the facts upon which it proceeded, as between him and third parties; but, of course, it would have been a complete justification to that part of the libelous article which substantially stated that the judgment had been recovered against him for premiums dishonestly appropriated, and the evidence would only have been of value as negativing the truth of the other libelous statements.

Other assignments of error are founded on the admission of evidence tending to show that the plaintiff had suffered loss of income in consequence of the libelous publication. It suffices to dispose of these that this issue was withdrawn from the consideration of the jury. The trial judge instructed the jury that no special damages had been proved.

Another assignment of error relates to the admission of testimony by the plaintiff that the president and secretary of the American Casualty & Security Company had been engaged jointly with him in certain Wall street speculations. The defendant had shown upon the cross-examination of the plaintiff as a witness that in December, 1890, he being at that time an agent of the American Casualty & Security Company, he was accused by some of the officers of not attending to his duties, and of spending his time in a bucket shop in Wall street, and was dismissed for that reason. Upon his redirect examination, he was permitted to show, against the objection of the defendant, that the president and secretary of the company had been engaged with him in speculations in Wall street, and that these speculations were the only foundation for the accusation. The evidence would have been inadmissible, except for that which had been elicited by the defendant, and in explanation of which it was introduced. The fact that the defendant had been discharged because he had been speculating in Wall street was foreign to any legitimate issue in controversy. The libelous publication asserted, in substance, that he had been dismissed because he had misappropriated moneys. Proof that he had been dismissed upon some other ground was utterly irrelevant. A defendant is not permitted to prove any other acts or conduct militating against the plaintiff's character except those specifically embraced in the imputation which is the basis of the action. Pallet v. Sargent, 36 N. H. 496; Ridley v. Perry, 16 Me. 21; Burford v. Wible, 32 Pa. St. 95; Watters v. Smoot, 11

Ired. 315. The only effect of the testimony elicited by the defendant was to besmirch the plaintiff's character. The explanatory testimony, though not very valuable, tended to repel the suggestion of the plaintiff's misconduct. The defendant cannot be heard to complain that the plaintiff accepted the invitation to try an irrelevant issue.

Another assignment of error relates to the reception of two letters written by the attorney of the plaintiff to the defendant after the publication of the libel, and before the commencement of the suit. The letter set forth in the answer of the defendant, and relied upon in mitigation of damages, as containing an offer to publish a statement from the plaintiff upon the subject-matter of the libel, was in evidence, having been admitted by the replication. It was an answer, and purported to be upon its face, to the two letters introduced. The first of the two letters, among other things, after referring to the libelous publication, and the retraction which had been made by the original author of the charges, informed the defendant, in substance, that the plaintiff would accept proper reparation, including a suitable retraction and a satisfactory pecuniary compensation. The second letter refers to an interview between the writer and the plaintiff, as requested by an agent of the defendant, and, among other things, states what terms of settlement would be satisfactory to the plaintiff, one of them being a satisfactory retraction. The letter of the defendant in reply to these two letters expresses the willingness of the defendant to publish "conspicuously, in the form of an interview or letter, any proper statement" which plaintiff might desire to make, and concludes, by referring the matter to the defendant's attorney, in the event that the plaintiff "does not care to avail himself of this offer, and proposes to take any legal proceedings."

The offer to publish an interview with or a letter from the plaintiff was in no sense a retraction of the libel. It was doubtless made in good faith, but proceeded upon a grave misconception of the duty incumbent upon a newspaper, which has lent the sanction of its name and responsibility to the circulation of a defamatory article, to give equal sanction to the retraction. Read by itself, the defendant's letter might have been construed as a voluntary proposition to afford the plaintiff an opportunity to vindicate himself. This would have indicated a kindly disposition towards him, and, to that extent, would have repelled any inference of malice in fact. Read with the others, it was not a voluntary offer, but one made under the stress of an impending suit for damages. The three letters together also denoted that the defendant, after ample opportunity had been afforded to it to repair in some degree the wrong which it had done to the plaintiff, was still contumacious. It is always competent for a plaintiff in a libel suit to show that he endeavored to procure a retraction from the defendant, and was denied, and equally competent to show that the libeler has refused to make any reparation, notwithstanding he has been informed of the falsity of the published matter. Such evidence has an important bearing upon the plaintiff's measure of

recovery, and is admissible in aggravation of the damages. The language of Chief Justice Nelson is apposite:

"A libelous publication may be inadvertently admitted into the columns of a newspaper, and the editor chargeable only with mistake or indifference to the truth: but if, when advised of his error, he hesitates to correct it, the case rises to one of premeditated wrong, of settled and determined malignity towards the party injured, which should be dealt with accordingly. There is no longer room for any indulgence towards the act, and the party becomes a fit object for exemplary punishment. All the charities of the law give way at such a prostitution of the public press." Hotchkiss v. Oliphant, 2 Hill, 516.

In the two letters thus introduced there were statements of fact, some of which had already been testified to by the plaintiff, and some of which had been shown by other evidence, but of which the letters themselves were not competent evidence. If the parts of the letters which recited these facts had been objected to, it might have been error to permit them to be read, although the general rule is that, where a letter has been given in evidence by one of the parties to the action, the other party may also, for the purpose of explaining its meaning, introduce a previous letter from himself, to which this letter was a reply. Trischet v. Insurance Co., 14 Gray, 456; Rouse v. Whited, 25 N. Y. 170. No such objection, however, was made; and in the absence of such an objection, inasmuch as other parts of the letters were admissible, it was not error in the trial judge to admit the letters.

We have carefully examined the assignments of error based upon the exceptions to the instructions of the trial judge to the jury, and upon his refusal to give instructions requested in behalf of the defendant. Upon the facts in evidence there was no question for the jury, except as to the amount of damages. The published article was plainly libelous, and not a single fact which it asserted was established by the proof. The gist of the defamation was that the plaintiff had been discovered to be a dishonest agent, who had feloniously appropriated moneys, and been dismissed therefor by his employer. The only semblance of foundation for the charge, presented by the evidence, was that he had been dismissed by another employer for speculating in Wall street. The defamatory article was published upon information derived from sources hostile to the plaintiff, and known to be so by the reporter of the defendant who prepared it; and, though the plaintiff was readily accessible, the reporter did not attempt to get his version of the facts. Neither the reporter nor any other agent of the defendant was actuated by any personal malice towards the plaintiff, but the publication was made without adequate investigation to verify the truth of the libelous matter. It belonged to that class of publications which the law regards as wantonly defamatory, because characterized by a reckless indifference to the rights of others. After the defendant had been informed that the author of the falsehood had made a written retraction, it was too indifferent to the wrong it had committed to make a retraction itself, and contented itself with offering to the plaintiff the poor satisfaction of publishing his own statement. The trial judge

would have been fully justified in taking from the jury every question except the amount of the recovery to which the plaintiff was entitled, and in instructing them that the case authorized a verdict for exemplary damages, and that there was not a fact in evidence entitled to legitimate consideration as tending in mitigation of damages. His instructions were much more liberal to the defendant. At the request of the defendant he granted instructions which were distinctly more favorable to it than the evidence warranted. Among these was the following:

"That, if the substantial imputation be proved true, a slight inaccuracy in one of its details is not material, provided such inaccuracy in no way alters the complexion of the affair, and would have no different effect on the reader than that which the literal truth would produce."

As an abstract proposition, this instruction expressed a correct view of the law, but there was no fact in evidence which sanctioned its application to the case in hand. It is insisted that his refusal to grant the ninth request was error. This refusal might be open to criticism if the request and refusal were isolated from the instructions already given. The instruction prayed for was one of three relating to the question of special damages. The trial judge, having granted the others, thereby instructing the jury that the case was not one for special damages, very properly declined to present to them any definition of the rule by which such damages were to be ascertained.

We find no error in the rulings at the trial, and conclude that the judgment should be affirmed.